FILED ____ ENTERED
LODGED ____ RECEIVED

SEP 26 2014  BJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## for the
## WESTERN DISTRICT OF WASHINGTON

CV14 1492 RSL

| | |
|---|---|
| LANCE C. BABCOCK | Civil Action No. |
| Plaintiff, | |
| v. | Complaint for Damages Resulting from Reckless Endangerment and Criminal Negligence. |
| HARBORVIEW MEDICAL CENTER, | Civil Rights, 42 U.S.C. §1983 |
| Defendant. | |

## INTRODUCTION

(1).   The Plaintiff, Lance C. Babcock, brings forth this suit against Defendant, Harborview Medical Center, which is a hospital "owned" by King County and "managed" under contract by the University of Washington.

(2).   This instant action is brought against Defendant hospital for failure to comply with applicable federal statutes relating to its operations and duty arising under the framework of the Emergency Medical Treatment and Labor Act (EMTALA). The doctrine of respondeat superior

CMPLT_DMGS_1983
Case No.

1 of 10

Lance Babcock
P.O. Box 2098
Kirkland, WA 98083
425-896-7107

is applicable under the circumstances as Defendant's agents were acting "under color of" State law and authority.

(3).    That although, the the doctors actions set forth in this instant case are alleged to be unlawful, they constitute more than merely - "acting under the color of" authority. The administration at the highest level (including the Medical Center Director) took responsibility for the acts done by and through its agents and insisted its agent doctors were carrying out "official policy." There was in fact an apparent official administrative "policy" of - aiding and abetting, fraudulent concealment and deliberate misrepresentation of material facts which will be set forth pursuant to F.R.C.P. - Rule 9(b).

## JURISDICTION

(4).    This action arises under federal statutes: 28 U.S.C. §1331, 42 U.S.C. §1395dd, 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §18116, 42 U.S.C. §2000d, 29 U.S.C. §794, 20 U.S.C. §1681; and under the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

## PARTIES AND VENUE

(5).    The Plaintiff, Lance C. Babcock, in this instant action is an adult natural person and resident of King County, Washington. Plaintiff's address is 11411 111th Pl Ne Kirkland, WA 98033 Ph. 425-896-7107

(6).    The Defendant, Harborview Medical Center, is a public entity which is located in King County, Washington with the capacity to be sued under applicable laws (RCW 4.96.010 and RCW 4.96.020). Defendant's address is 325 9th Ave Seattle, WA 98104. Ph. 206-744-3000

(7).     The factual basis constituting this instant cause of action occurred within King County, Washington - at Harborview Medical Center on September 27, 2012.

## BACKGROUND

(8).     Plaintiff's given legal name is Lance Craig Babcock. It is the name on her birth certificate. Her legal name the entire time through grade school, high school, and universities. She served in the military for ten years with the same name and has four honorable discharge certificates and DD-214 with that name. She has had a passport with that name most of her adult life. She has a social security number and has paid taxes with the same name. She has had drivers licenses in three different states with the same name. She has had numerous bank accounts with the same name. She has owned property with the same name. She has been married three times with the name. It is the name given to her by Plaintiff's mother and the name used by her grandmother and family. It is her given legal name and will continue to be - she has no intention whatsoever of changing it to anything else, and has never entertained the notion.

(9).     Beginning in December 2011, Dr. Yang at the Veteran's Affairs Medical Center has continued to claim that because Plaintiff is a transgender veteran, that "policy" requires Plaintiff to change given legal name, and all identity documents to an "appropriate" female name. Another requirement is to dress and act "appropriately" feminine. These requirements are to prove Plaintiff is of "sound mind" and has the mental capacity to provide informed consent. Until Plaintiff fulfills these requirements, veteran is not entitled health care at VAMC.

## CAUSE OF ACTION

(10).    Plaintiff entered the Harborview Medical Center Emergency Department at approximately 3 AM on September 27, 2012. The Plaintiff explained to the triage nurse that she was in the process of self castration and that she had fastened a tourniquet around her scrotum

three days prior and that the pain was excruciating and that she had been unable to sleep the entire time. Plaintiff described the state of her testicles as being swollen at least four times normal, black, blue, and purple - with surface veins visibly bursting and that she could barely walk. Plaintiff was directed to a security door where she was met by two female doctors. Plaintiff could barely walk another forty feet following behind them. The three of them entered a doored, single room with gurney. Plaintiff told them that she was attempting to castrate herself. They asked her to disrobe and put on a hospital gown. One doctor left the room and returned in several minutes with a male doctor.

(11).    The Plaintiff gave the three doctors her medical history which included as main points: That she was a disabled veteran and a patient at the Veteran's Affair Medical Center (VAMC) – Seattle; was diagnosed with chronic PTSD, Anxiety, Depression, and Gender Identity Disorder, and had an extensive history of panic attacks; and a recent history of deep vein thrombosis and three pulmonary embolisms – the first in March 2011, and two within a week of each other in June 2012 - and that she was currently on anti-coagulation therapy.

(12).    Furthermore, because of her pulmonary embolisms - she had been referred two times by several doctors to urology at the VA, but that the urologist there refused to provide any health care because Plaintiff was a transsexual. The first referral was in December 2011. The second on September 21, 2012 at which time the urologist said that she refuses to help Plaintiff or treat her in any way and that Plaintiff should castrate herself. Which Plaintiff was in the process of acting on.

(13).    Plaintiff described that three days prior she had picked up an automotive hose clamp laying in the yard to use as a tourniquet. She had tightened it around the scrotum just above the testicles to reduce blood loss from cutting. She was hoping that within threes days the testicles

would be dead at which point she would cut them off. She was going to cut the testicles off in front of the emergency department but changed her mind at the last minute thinking that they were probably dead and would have to be surgically removed. She suggested to the doctor that he locate a screw driver and allow her to unfasten the hose clamp herself. Plaintiff described the pain as excruciating and she asked the female doctor present to have morphine available which the doctor stated was on hand.

(14).   The male doctor stated that an on-call urologist was on the way to the hospital and that Plaintiff was going to be taken to have an ultrasound done of the testicles and then brought back to the emergency department. Later, back in the emergency department, the same male the doctor came in and said that Dr. Yang would be there soon. Plaintiff said very directly and clearly to the doctors present, "Dr. Yang - it can't be the same Dr. Yang from the VA. That's the doctor in urology who told me to castrate myself – she is why I'm here. If it is the same doctor Yang – keep her away from me. I don't want her to come any where near me. You better find any one else because she had better not touch me."

(15).   The the male doctor came back in along with Dr. Yang and at least four other female doctors. Plaintiff was terrified that even if her testicles were severely damaged and had to be removed that she could not trust Dr. Yang who stated just several days prior that she refuses to help or treat Plaintiff in any way and that Plaintiff should castrate herself. Plaintiff was very afraid that Dr. Yang may even do something to deliberately hurt Plaintiff.

(16).   Plaintiff asked Dr. Yang why she was there, because just several days before said that she would do nothing to help or provide care for Plaintiff. Dr. Yang stated to Plaintiff that her position was the same as always - which she was going to do nothing for Plaintiff. Plaintiff responded stating that in that case she will continue to work at castrating herself and this was

1. merely the first try – a learning experience, and that she will continue until it is done. Furthermore, that she would try again as soon as she returned home.

(17). Dr. Yang then looked at the computer monitor and said to Plaintiff, "your name here is still, Lance Babcock, which is incorrect." Plaintiff responded saying "I have no idea what you are talking about – I don't have the right name? What name am I supposed to have? I'll tell you what – tomorrow instead of castrating myself – I'm going to take a can of gas and light myself on fire in front of the VA at the federal building – hows that."

(18). Plaintiff clearly stated in the presence of six or more doctors that she wanted to be examined and treated by any one – but most definitely not by Dr. Yang. Plaintiff stated to Dr. Yang "I don't want you to come any where near me." Dr Yang and her entourage left and within several minutes Plaintiff was ejected from the emergency department escorted by a security officer.

(19). The next day on September 28, 2012 Plaintiff spoke to one of her treating physicians relating all of the events leading up to, and at the emergency department at Harborview Medical Center. Plaintiff stated that she was in fact going to immediately leave her home with a can of gas and light herself on fire at the federal building in Seattle because of all that had happened.

(20). The Kirkland police were sent to Plaintiff's home where she was taken into custody and transported to Evergreen Medical Center. Plaintiff was then transferred to Fairfax Psychiatric Hospital for emergency detention and observation. Plaintiff was evaluated and involuntarily committed for fourteen days.

(21). Subsequent to Plaintiff's release from Fairfax Psychiatric Hospital, Plaintiff communicated with Harborview Medical Center administration regarding their refusal to provide emergency medical care.

Plaintiff further asked if it was appropriate that she had been refused that care because of Dr. Yang's claims that Plaintiff has a "gender inappropriate" or "incorrect" name. Plaintiff was told by the Harborview Medical Center administration that Dr. Yang was acting as a consultant from the Veteran's Affairs Medical Center and that Plaintiff should take up any "policy" complaints with the Department of Veteran's Affairs. Harborview Medical Center also denied that Dr. Yang was on the medical staff and that her presence at the emergency department was merely as an outside consultant and that Harborview was not responsible for Dr. Yang. Recent investigations reveal that Dr. Yangs curriculum vitae on an official University of Washington web page states that from 2010 to present, she has been the chief of urology at Harborview Medical Center.

### FIRST CLAIM FOR RELIEF

(22). Defendant hospital refused to provide Plaintiff a screening examination to determine whether or not an emergency medical condition exist. Plaintiff presented with an emergency medical condition that any prudent layperson would recognize as necessitating emergency medical care. Defendant hospital had the capability to provide the necessary and appropriate emergency medical examination and treatment and routinely provides such to other individuals in similar condition.

### SECOND CLAIM FOR RELIEF

(23). Defendant hospital refused to provide necessary emergency medical treatment to stabilize Patient's condition. Defendant hospital had the capability to provide the necessary and appropriate emergency medical stabilization and routinely provides such to other individuals in similar condition.

### THIRD CLAIM FOR RELIEF

(24). Defendant hospital transferred Plaintiff without Plaintiff's consent and with full knowledge of Plaintiff's existing emergency medical condition.

### FOURTH CLAIM FOR RELIEF

(25). Defendant hospital's agent doctors recklessly endangered Plaintiff's health and safety knowing that she was gravely disabled and presented an imminent risk to herself. Defendant's agent doctors had full knowledge there exist a substantial likelihood of serious harm to Plaintiff having been denied appropriate and necessary emergency medical examination and treatment. Plaintiff's transfer was undertaken with deliberate indifference and disregard for her health and safety.

### FIFTH CLAIM FOR RELIEF

(26). Defendant hospital allowed Dr. Yang to assault plaintiff by providing access to Plaintiff while in the emergency department. Dr. Yang's presence was to prevent Plaintiff from receiving emergency medical treatment and deliberately endanger the safety and life of the Plaintiff. Dr. Yang's advice given to the patient to self castrate – done with full knowledge of Plaintiff's condition while anti-coagulated was in effect promoting a suicide attempt. Dr. Yang knew from Plaintiff's medical records that from January 2012 there were thirteen entries recorded of Plaintiff discussing self castration as a result of denial of health care at the VA. Plaintiff's medical records further indicate that a nurse at the VA notified Dr. Yang about Plaintiff's imminent self castration three days prior to Plaintiff's presentation at the Harborview Medical Center emergency department.

### SIXTH CLAIM FOR RELIEF

(27). Plaintiff was refused necessary emergency medical examination and treatment because of Plaintiff's sex and gender. Plaintiff's status as a transsexual person – was the basis by which

Defendant hospital treated Plaintiff differently. Plaintiff has the fundamental rights of free speech and self expression along along with an inherent right to "liberty" and self determination. Stating that Plaintiff does not have the "correct" or "appropriate" female name or "dress appropriately" feminine is not only clearly discriminatory but is also a violation of Plaintiff's Constitutional rights, all of which apply under the Fourteenth Amendment's due process and equal protection clauses.

### SEVENTH CLAIM FOR RELIEF

(28).   Defendant hospital discriminated against Plaintiff based on disability. Plaintiff's veteran disability status and medical diagnosis were known and used as factors in refusing emergency medical examination and treatment. Plaintiff was given discharge papers from Harborview Medical Center emergency department telling Plaintiff to go back to the Veteran's Affairs Medical Center, implicitly claiming that she was not eligible for emergency medical care in the community.

### EIGHTH CLAIM FOR RELIEF

(29).   Defendant hospital discriminated against Plaintiff based on race, color, and national origin. Plaintiff's name and clothing are also inherent parts of individual identity which is based on these issues and not within the realm of governmental interference.

### NINTH CLAIM FOR RELIEF

(30).   Defendant hospital's agent doctors and administrators conspired with federal officers to deprive Plaintiff of her Constitutional rights. Harborveiw Medical Center implemented a "policy" being carried out by Dr. Yang which was known by Defendant's agents as being an unlawful deprivation of civil rights whether carried out at a federal facility, or within Washington State by Harborview Medical Center. Stated by Dr. Yang in Plaintiff's medical records are

numerous references to "our policy" or "we require", which are demonstrative of acting in concert with one or more persons. The cause of action in this instant case was in furtherance of that deprivation and was done with assistance by agent doctors within the emergency department who also falsified documents and logs. Hospital administrators acted as accessories after the fact and willfully continued taking action to deprive plaintiff of federally protected rights and those fundamental liberties guaranteed by the Constitution of the United States.

## PRAYER FOR RELIEF

(31).    The Plaintiff respectfully requests the following:

A.    The court determine through adjudication the Defendant hospital agents whom were involved and their individual acts in furtherance of Plaintiff's deprivation of rights so that they can be held individually responsible through malpractice actions.

B.    The court award compensatory damages for physical injury, pain and suffering, severe mental and emotional distress - pain and anguish in the sum of $13,000,000.99.

C.    The court award exemplary damages in the sum of $13,000,000.99.

## DEMAND FOR JURY TRIAL

September 26, 2014

Date

*Lance C Babcock*

Signature of Plaintiff, Pro Se

LANCE BABCOCK
P.O. BOX 2098
KIRKLAND, WA. 98083

CMPLT_DMGS_1983            10 of 10            Lance Babcock
Case No.                                       P.O. Box 2098
                                               Kirkland, WA 98083
                                               425-896-7107